IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2001

## STATE OF TENNESSEE v. JAVON WEBSTER

**Appeal from the Criminal Court for Shelby County**
**Nos. 99-03924, 25      Chris Craft, Judge**

---

**No. W2000-01912-CCA-R3-CD  - Filed February 7, 2002**

---

The Defendant, Javon Webster, was convicted of felony murder and attempted especially aggravated robbery. The trial court sentenced the Defendant to life in the Department of Correction for the felony murder conviction. The trial court merged the Defendant's attempted especially aggravated robbery conviction with the felony murder conviction. On appeal, the Defendant contends that (1) the evidence is insufficient to support the convictions, (2) the trial court erred by admitting photographs of the deceased, (3) the trial court erred by denying the Defendant's request for a special jury instruction on duress, and (4) the trial court erred by denying the Defendant's motion to suppress his statement to police. The State also raises an issue on appeal, arguing that the trial court erred by merging the Defendant's conviction for attempted especially aggravated robbery into his felony murder conviction. We affirm the felony murder conviction and reinstate and remand for sentencing the especially aggravated robbery conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part;**
**Reversed in Part; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Javon Webster.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jerry Kitchen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

About seven o'clock in the evening on December 2, 1997, Cecil Goldman, the victim, was shot and killed as he left his job at the Ace Check Cashing business on Getwell Street in Memphis. Prior to his death, the victim locked the building and armed the security system, thereby preventing his assailants from robbing the business.

At the time of the shooting, Karen Lewis was traveling on Getwell and observed two men wearing hoods and a white man wearing blue jeans outside of Ace Check Cashing. As she passed, Ms. Lewis heard gunshots and saw the white man fall to the ground. By the time Ms. Lewis was able to turn around and return to the scene, the two men in hoods were gone.

Shirley Smith was at a Wendy's restaurant on Getwell near Ace Check Cashing when the shooting occurred. She heard three men arguing at Ace Check Cashing when she arrived at Wendy's. As she entered the restaurant, she heard three shots and saw two young black men, one wearing blue and carrying a gun, run into the nearby woods.

On December 5, after receiving a tip from an anonymous "Crimestopper's" call, Sergeant Sammy Ballard of the Memphis Police Department Homicide Squad went to the Defendant's residence to question him concerning both an unrelated burglary and the murder of the victim in this case. When Sergeant Ballard first arrived, the Defendant was working on his car and identified himself as Carl. Eventually, the Defendant revealed his true identity and agreed to accompany Sergeant Ballard to the police station for questioning. Upon arrival at the police station, the Defendant was advised of his constitutional rights and signed a waiver of rights form at 4:43 p.m. The initial questioning involved the Defendant's possible involvement in the burglary; however, when the Defendant mentioned his friend "Pookey," also known as Darius Bowles, and who also was mentioned in the anonymous Crimestopper's call, the interview focused on the murder at Ace Check Cashing. The Defendant denied any involvement in the shooting.

Investigators then located Darius Bowles who implicated the Defendant in the shooting. In light of this new information, Lieutenants Charles Logan and A.J. Christian advised the Defendant of his constitutional rights for a second time and conducted another interview. The Defendant gave the officers another statement in which he admitted involvement in the attempted robbery, but denied shooting the victim. The Defendant's second statement implicated a man named "Cous" and a man named "L.A.," who the Defendant said supplied the two guns for the robbery. The Defendant stated that the plan was for the Defendant to approach the victim before he locked the store in order to gain access to and rob the check cashing business. The Defendant, however, froze when approaching the victim and "Cous" and "L.A." attempted to force the victim back into the building. When the victim struggled, "Cous" shot him. The interview was completed at 1:55 a.m. on December 6. The Defendant was formally charged on December 9.

Pursuant to the Crimestopper's tip, investigators also discovered a .380 Loreson pistol in a trash can at a bus stop on Poplar Street in Memphis and another .380 caliber pistol at the home of

Montea Wilson, who is also known as "L.A." Special Agent Don Carman of the Tennessee Bureau of Investigation examined the recovered pistols and determined that a bullet found at the scene of the murder matched bullets test fired from the Loreson pistol.

Assistant Medical Examiner Dr. Thomas Deering testified at trial that the victim died from a gunshot wound to the abdomen. Dr. Deering stated that the victim was also shot in the left leg and right arm.

Jasper Temple testified at trial that he, the Defendant, Montea Wilson, Darius Bowles, and Vincent Broadie were all involved in the attempted robbery and murder of the victim. Mr. Temple stated that Mr. Wilson, a/k/a "L.A.," planned the robbery and that the Defendant and Darius Bowles were each armed with a pistol. Mr. Temple and Mr. Broadie were to be the look-outs for the crime. According to the plan, the Defendant was to approach the victim and demand money and Mr. Bowles was to take the money. Mr. Wilson gave the order to approach the victim and the Defendant ran up to the victim, brandished the pistol and demanded money. The victim began screaming and throwing papers. The Defendant then shot the victim. Mr. Temple testified that after shots were fired, everyone scattered. Mr. Temple denied threatening the Defendant in order to convince him to participate in the robbery.

The Defendant testified at trial that on the night of the murder he and Darius Bowles went to the home of a mutual friend for dinner. Also present were Mr. Broadie, Mr. Wilson, and Mr. Temple. The Defendant had met neither Mr. Wilson nor Mr. Temple before. The Defendant claimed that Mr. Broadie suggested robbing a nearby Texaco. The Defendant further claimed that when the conversation turned to crime he and Mr. Bowles attempted to leave, but Mr. Temple threatened them with a pistol. As the group approached the Texaco, Mr. Broadie and Mr. Temple changed the plan and decided to rob Ace Check Cashing. The Defendant stated that, although he was armed, he was still frightened of Mr. Broadie and Mr. Temple. The Defendant was ordered to rob the victim. During the robbery, the victim began to scream and throw things. The Defendant stated that he began to wrestle with the victim and heard Mr. Temple telling him to kill the victim or Mr. Temple would kill the Defendant. The Defendant suddenly realized he was firing the gun. After the shooting, the Defendant ran. Mr. Broadie and Mr. Temple again threatened the Defendant and Mr. Bowles after the robbery.

Darius Bowles testified as a rebuttal witness for the State. Mr. Bowles testified that he participated in the attempted robbery because he needed money and that no one threatened him or the Defendant in order to convince them to participate. Mr. Bowles further stated that he had spoken with the Defendant since the crime and the Defendant informed him that he was going to tell the jury that he was forced to participate in the crime and encouraged Mr. Bowles to say the same.

**SUFFICIENCY**

-3-

First, the Defendant contends that the evidence is insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The Defendant was convicted of first degree felony murder and attempted especially aggravated robbery. Felony murder is a killing committed during the perpetration or attempted perpetration of a robbery. See Tenn. Code Ann. § 39-13-202(a)(2). Robbery is an intentional or knowing theft of property from the person of another by violence or putting the person in fear. See id. § 39-13-401. A robbery becomes an especially aggravated robbery when it is accomplished with a deadly weapon and the victim suffers serious bodily injury. See id. § 39-13-403. One attempts to commit an offense when one acts with the intent "to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Id. § 39-12-101(a)(3).

In the present case, the Defendant and his codefendants testified that the Defendant approached the victim, pointed a gun at the victim's head and demanded money. When the victim resisted, the Defendant shot him three times, killing him. The Defendant's only defense was that he was forced to participate in the robbery by two of his codefendants who threatened to kill him if he did not cooperate. The codefendants denied the Defendant's allegations and stated that the Defendant participated in the crime freely. It is clear that the jury credited their testimony. Furthermore, in his statement to police the Defendant did not mention the alleged coercion, but stated that he participated in the crime because he needed money.

Accordingly, we find that the Defendant's conduct in approaching the victim and pointing a gun at the victim's head constituted a substantial step toward the commission of an especially aggravated robbery. Furthermore, the murder of the victim occurred during the attempted especially aggravated robbery. Accordingly, we find sufficient evidence to support the Defendant's convictions of felony murder and attempted especially aggravated robbery. This issue is without merit.

## VICTIM PHOTOGRAPHS

The Defendant next challenges the admission of photographs of the victim's wounds, alleging that the photos were inflammatory and prejudicial. Initially, we note that a trial court's decision regarding the admissibility of photographs will not be reversed on appeal absent a clear showing of an abuse of discretion. See State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994). Moreover, "photographs of the corpse are admissible in murder prosecutions if they are relevant to the issues on trial, notwithstanding their gruesome and horrifying character." State v. Banks, 564 S.W.2d 947, 950-51 (Tenn. 1978). However, "if they are not relevant to prove some part of the prosecution's case, they may not be admitted solely to inflame the jury and prejudice them against the defendant."Id. at 951 (citing Milam v. Commonwealth, 275 S.W.2d 921 (Ky. 1955)).

In this case, the photographs were used to illustrate the testimony of Dr. Deering concerning the number and location of the gunshot wounds. The Defendant suggests that he essentially stipulated to the number of gunshot wounds suffered by the victim. The record is devoid of any express stipulation. The trial court found that the photos were relevant to establish the number of shots fired by the Defendant, and that the photos were not inflammatory. Additionally, we have reviewed the photographs, and while they are unpleasant, they are isolated shots of the three gunshot wounds and are not particularly gruesome or horrifying. Thus, we find that the trial judge did not abuse his discretion. This issue is without merit.

## DURESS INSTRUCTION

The Defendant also argues that the trial court erred by refusing to instruct the jury with the special duress instruction requested by the Defendant. The Defendant requested that the trial court instruct the jury that "the facts relied on by the defendant constituting duress may be considered by you ladies and gentlemen of the jury as to the defendant's state of mind which would reduce the charge of murder in the first degree to murder in the second degree." The trial court found such a diminished capacity instruction to be inapplicable because there was no evidence that the Defendant was mentally unsound or incompetent. The trial court did, however, properly instruct the jury regarding the law of duress.

There is an affirmative duty upon a trial judge in a criminal case to give the jury a complete charge on the law applicable to the facts of the case. See State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). A defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury under proper instructions. See State v. Phipps, 883 S.W.2d 138, 149-

50 (Tenn. Crim. App. 1994). However, requested instructions need not be given when existing instructions are correct statements of law and adequately cover the subject matter contained in the special instruction. See State v. Bohanan, 745 S.W.2d 892, 897 (Tenn. Crim. App. 1987).

In the present case, the Defendant's only defense was that of duress. The Defendant claimed that he participated in the robbery and murder of the victim because his codefendants placed a gun to his head and threatened to kill him. Duress is a "defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done." Tenn. Code Ann. § 39-11-504 (a). The threatened harm must be continuous throughout the time the act is committed, and the defense is unavailable to a person who intentionally, knowingly, or recklessly becomes involved in the situation that subjects that person to compulsion. See id. § 39-11-504 (a)(b).

The Defendant is suggesting through his requested instruction that because he was subjected to a threat of violence or death by his codefendants he was not capable of acting with the requisite mens rea to commit first degree murder. Accordingly, the defendant believes he was entitled to a diminished capacity instruction via his duress defense. The Defendant relies on this court's decision in Phipps to support his argument. In Phipps, this Court held that evidence of a defendant's mental state or mental condition was relevant and admissible in certain cases to rebut the mens rea element of an offense. Phipps, 883 S.W.2d at 149. The Defendant's reliance on Phipps in this case, however, is misplaced. Phipps, unlike the present case, involved a defendant who suffered from post-traumatic stress syndrome as a result of his military service in Operation Desert Storm. Id. We held that the trial court erred in refusing to instruct the jury that they could consider the defendant's mental condition in determining the sufficiency of the evidence of intent as required for the various degrees of homicide. Id. at 151.

In the present case, the Defendant's mental state or condition was not in issue. No evidence was presented to suggest that the Defendant was not a competent and mentally stable individual. Therefore, the trial court did not err in refusing a jury instruction regarding reducing a charge of first degree murder to second degree based upon a diminished capacity theory of duress because such an instruction was not supported by the facts. Indeed, such an instruction would not have been a correct statement of law. The legislature has provided by statute a defense to criminal prosecution for a defendant who acted under duress. See Tenn. Code Ann. § 39-11-504. A defendant who commits a crime under the threat of death or serious bodily injury is entitled to raise that issue before a jury. Id. If a jury finds that the defendant acted under such a threat the defendant should be acquitted of all charges. Id. In the present case, the jury clearly rejected the Defendant's claim that he acted under duress and convicted him of felony murder and attempted especially aggravated robbery. We find no error in the trial court's refusal to give the requested jury instruction. This issue is without merit.

**MOTION TO SUPPRESS**

Finally the Defendant contends that the trial court erred in refusing to suppress his statement to police because he was held for three days without a judicial determination of probable cause. The Defendant relies on State v. Huddleston, in which our supreme court held that when a person confesses after having been detained for 48 hours without a judicial determination of probable cause, the confession should be excluded unless the prosecution can show that the confession was sufficiently an act of free will in order to purge the taint of the unlawful detention. See 924 S.W.2d 666, 674 (Tenn. 1996). However, the Huddleston court also stated that "if the statement was given prior to the time the detention ripened into a constitutional violation, it is not the product of the illegality and should not be suppressed." Id. at 675.

A trial court's findings of fact during a suppression hearing will be upheld by this Court unless the evidence preponderates against it. See State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

At the hearing on the motion to suppress, the trial court found that the Defendant's confession was taken eleven hours after he was initially taken in for questioning. The trial court then determined that the Huddleston presumption of exclusion was inapplicable because the statement was given prior to the time the detention "ripened into a constitutional violation." After a thorough review of the record, we conclude that the trial court properly denied the Defendant's motion to suppress his statement to police.

Accordingly, this issue is without merit.

**MERGER OF OFFENSES**

The State raises one issue on appeal, arguing that the trial court erred in merging the Defendant's conviction for attempted especially aggravated robbery into his conviction for felony murder. The State asks this Court to reinstate the conviction and remand this case for sentencing on the attempted especially aggravated robbery conviction.

Tennessee case law makes it clear that separate convictions and punishments for felony murder and the underlying felony are permissible when the two offenses are charged as separate counts. See State v. Godsey, 60 S.W.3d 759, 776 (Tenn. 2001); State v. Blackburn, 694 S.W.2d 934, 937 (Tenn. 1985); State v. Zirkle, 910 S.W.2d 874, 890 (Tenn. Crim. App. 1995); Welch v. State, 836 S.W.2d 586, 588-89 (Tenn. Crim. App. 1992). Indeed, our supreme court has stated that "the Legislature intended that multiple punishments be imposed on conviction of a defendant for felony murder and for the underlying felony." Blackburn, 694 S.W.2d at 937. In upholding convictions for both felony murder and especially aggravated robbery, this Court has stated that "[e]very first degree felony murder does not involve an especially aggravated robbery, nor does every especially aggravated robbery involve a murder. Neither crime is essentially incidental to the other." State v. John Robert Tory, No. 03C01-9306-CR-00202, 1994 WL 398808, at *5 (Tenn. Crim. App., Knoxville, Aug. 3, 1994).

Therefore, the facts in the record are clearly sufficient to support the conviction for attempted especially aggravated robbery based upon the use of the deadly weapon and the victim's suffering serious bodily injury. The felony murder conviction is warranted by the additional fact that the victim died.

Accordingly, we conclude that the trial court erred in merging the two convictions. The conviction for attempted especially aggravated robbery is reinstated and that case is remanded to the trial court for sentencing.

## LESSER-INCLUDED OFFENSES OF FELONY MURDER

Finally, the State suggests in its brief that the trial court failed to instruct the jury on any lesser-included offenses of felony murder. See State v. Ely, 48 S.W.3d 710 (Tenn. 2001). The State also asserts that any error in this regard is harmless, because the jury was instructed on the lesser-included offenses to first degree premeditated murder. The Defendant does not assert any error on the part of the trial court in charging felony murder. The record does not contain a verbatim transcript of the jury charge. The copy of the jury charge contained in the technical record indicates that the jury was charged regarding first degree felony murder, first-degree premeditated murder, second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide. Based on the record before us, we cannot conclude that the trial judge erred in his instructions concerning lesser-included offenses.

## CONCLUSION

For the foregoing reasons, we conclude that the evidence is sufficient to support the convictions, the trial court did not err in allowing the introduction of photographs of the victim, the tiral court properly instructed the jury on the law of duress as applicable to the case, and the trial court properly denied the Defendant's motion to suppress. However, the trial court erred in merging the Defendant's attempted especially aggravated robbery conviction with his felony murder conviction. Accordingly, the Defendant's conviction for felony murder is AFFIRMED and his conviction for attempted especially aggravated robbery is REINSTATED and REMANDED for sentencing.

_____
DAVID H. WELLES, JUDGE

-8-