IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 10, 2004 Session

## STATE OF TENNESSEE v. KEVIN L. LAWRENCE

**Appeal by permission from the Court of Criminal Appeals
Criminal Court for Shelby County
No. 99-12786     Chris Craft, Judge**

----

**No. W2001-02638-SC-R11-CD** - **January 28, 2005**

----

We granted permission to appeal in this case pursuant to Tennessee Rule of Appellate Procedure 11 to determine whether the trial court properly denied the defendant's motion to suppress evidence obtained during the investigation of a shooting death.  To resolve this issue, we must determine whether the investigators had probable cause to arrest the defendant and whether the delay in taking him before a magistrate for a judicial determination of probable cause should independently require the exclusion of the evidence obtained during the first few hours of his detention.  Because we are of the opinion that the officers had probable cause to arrest the defendant, we conclude that the evidence recovered at the scene was not subject to suppression.  As to the defendant's claim of "unreasonable delay," it is obvious that the defendant was not taken before a magistrate for a judicial determination of probable cause within a constitutionally reasonable time.  However, the evidence the defendant sought to suppress was obtained during the first few hours of his arrest.  Thus, these evidentiary items were not tainted by exploitation of the constitutional violation and are not, therefore, subject to suppression.  Accordingly, we affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals
Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

William D. Massey and C. Michael Robbins, Memphis, Tennessee (on appeal); William D. Massey and Lorna McClusky, Memphis, Tennessee (at trial), for the appellant, Kevin L. Lawrence.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General; Phyllis Gardner and Jennifer Nichols, Assistant District Attorneys General, for the appellee, State of Tennessee.

**Opinion**

## I. Facts and Procedural History

The record indicates that at approximately eight o'clock in the evening of December 28, 1998, two men entered the home of the victim, Rodney Foster. One man directed the victim's family into a back bedroom, where he held them at gunpoint. The other man led the victim into the kitchen and fatally shot him. Following the shooting, both men fled the apartment.

The defendant, Kevin Lawrence, and two co-defendants, Toby Bailey and Christopher Lawson,[1] were indicted for first degree premeditated murder and felony murder for the death of the victim. Prior to trial, the defendant filed a motion to suppress evidence obtained during the investigation. He alleged that the evidence obtained following his arrest should be suppressed because the police did not have probable cause to arrest him and because he was held for a period of over eighty hours without a judicial determination of probable cause.

Officers investigating this case testified that on December 28, 1998, Officers Eric Jensen and Ladimer Howell of the Memphis Police Department responded to a call at the Wooddale Condominiums in Memphis to investigate a 911 hangup call. Jensen testified that he was the first officer on the scene and that as soon as he got out of his squad car, he heard two gunshots originating somewhere in the complex. Jensen then observed the defendant run past him. Within seconds, Howell arrived in a separate car. Jensen testified that Howell followed the defendant and that Jensen proceeded in the direction in which the gunshots had been fired.

Jensen then received a "shooting call" from the dispatcher. Jensen proceeded to the location indicated by the dispatcher and found the victim, who had been shot. Witnesses informed Jensen that "two male blacks in dark clothing" broke into the apartment, attempted to rob them, and shot the victim. Jensen testified that after securing the crime scene, he and Howell retraced the general path of the defendant. He stated that on that path, they located a revolver and a mask.

Howell gave similar testimony regarding the events on that evening. He stated that when he arrived on the scene, Jensen asked him if he had heard shots fired. Howell responded that he had not but that he had seen the man running. Howell followed the defendant and observed the defendant run in front of him, in between a couple of buildings, and through another building. He then saw the defendant emerge from the buildings and jump a fence. Howell was able to proceed through the gate to follow him.

At some point during the chase, Howell observed the defendant remove a dark-colored jacket and throw it onto a pile of garbage. Howell recalled that it was around thirty-five degrees that evening, so it seemed odd that the suspect would take off his jacket and throw it in the garbage. He stated that after the defendant discarded his jacket, he caught up with him. As Howell handcuffed

---

[1]Toby Bailey was tried with the defendant and acquitted of all charges. Christopher Lawson was tried separately for the crimes in this case.

the defendant, he noticed gray duct tape on the defendant's fingers.

Howell testified that while he was escorting the defendant to the squad car, he heard a "wounding call" on the radio, so he grabbed the jacket that the defendant had discarded and went to the apartment identified in the call. After arriving at the scene, Howell found that the tape that had been on the defendant's fingers had been stuffed between the door and the seat of the squad car. Howell testified that he and Jensen later took a walk to investigate the area. He recalled that Jensen found a handgun, and he found a "sleeve" with two holes cut in it that could have been used as a mask.

Following the hearing in which the above evidence was heard, the trial court denied the defendant's motion to suppress. The trial court held that the police had probable cause to arrest the defendant and seize the items in question and that the detention of over forty-eight hours was not relevant because the evidence was obtained during the first forty-eight hours after his arrest. At the conclusion of the proof, a Shelby County jury convicted the defendant of first degree felony murder and second degree murder. The trial court merged the offenses and, for felony murder, sentenced the defendant to life imprisonment with the possibility of parole. The Court of Criminal Appeals affirmed the judgment of the trial court, holding that there was probable cause to support the defendant's arrest and that although there had been an undue delay in taking the defendant before a magistrate for a judicial determination on probable cause, the evidence need not be suppressed because it was obtained during the first forty-eight hours after the arrest. The defendant now appeals pursuant to Tennessee Rule of Appellate Procedure 11, contending that the trial court erred in its refusal to grant his motion to suppress evidence.

## II. Standard of Review

The trial court's findings of fact at a suppression hearing are presumptively correct on appeal unless the evidence preponderates otherwise. State v. Davis, 141 S.W.3d 600, 625 (Tenn. 2004); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The application of the law to the facts is reviewed de novo. Davis, 141 S.W.3d at 625.

## III. Analysis

In this appeal, the defendant contends that the trial court erred in refusing to suppress certain evidence. This evidence consists of duct tape[2] first observed by the arresting officers on the

---

[2]With regard to the defendant's duct-taped fingers, Officer Howell testified that he had first observed them during the confrontation. Apparently, the defendant stripped the pieces of tape from his fingers and stuffed them between the seat and the door of the patrol car, and this is where Officer Howell recovered them. The seizure of this apparently abandoned property does not in any way implicate the Fourth Amendment. See State v. Ross, 49 S.W.3d 833, 842 (Tenn. 2001) (holding that "a defendant's disclaimer of an interest in the object of a government investigation will result in a loss of the defendant's subjective expectation of privacy in that object").

defendant's fingers and the results of a gunshot residue test administered to the defendant during in-custody interrogation.

The defendant asserts two grounds in support of his contentions that: (1) he was arrested without probable cause; and (2) he was not taken before a magistrate in a timely manner.

## A. Probable Cause

We begin our analysis by determining whether the police had probable cause to arrest the defendant. The defendant contends that there was no probable cause on the night of the arrest because none of the three witnesses who viewed him at the scene identified him as one of the offenders. We reach a different conclusion.

An officer may make a warrantless arrest "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." Tenn. Code Ann. § 40-7-103(a)(3) (2003). Simply stated, the officer must have "probable cause to believe the person to be arrested has committed the crime." State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000). Probable cause depends on whether the facts and circumstances and reliable information known to the officer at the time of arrest were "'sufficient to warrant a prudent [person] in believing that the [individual] had committed or was committing an offense.'" State v. Bridges, 963 S.W.2d 487, 491 (Tenn. 1997) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964); State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982)). Probable cause must be more than a mere suspicion. Melson, 638 S.W.2d at 350.

In finding that the police had probable cause to arrest the defendant, the trial court stated,

> After receiving a dispatch regarding the 911 hangup call, the officers had a duty to investigate. Immediately after arriving on the scene, they heard shots fired, and saw the defendant running from the scene five seconds later. While following the defendant, [O]fficer Howell saw him jump a fence and remove his coat in 35 degree weather, throwing it on a garbage pile. He therefore had reasonable suspicion to detain him for further investigation. After [Officer Jensen] made the scene, and determined a robbery and possible felony murder had been committed, they found the mask and gun along the route the defendant used to flee, and observed that the defendant had attempted to remove and hide the tape on his fingers, they had probable cause to arrest him.

Here, it is difficult to identify the precise point at which "reasonable suspicion" for the initial chase and detention ripened into "probable cause" for arrest. Indeed, we need not identify that point because the several separate events unfolded in close temporal proximity.

The defendant contends that the failure of the witnesses to identify him as one of the perpetrators demonstrates a lack of probable cause. An officer has probable cause for a warrantless

-4-

arrest when a felony has in fact been committed, and the officer has reasonable cause to believe that the person arrested committed the crime. Tenn. Code Ann. § 40-7-103(a)(3) (2003). There are several means by which the determination that the defendant is the perpetrator can be made, and among those is identification at the scene. On-scene identification, however, is but one fact that the trial court may consider along with other facts and circumstances. See Beck, 379 U.S. at 91; State v. Yeargan, 958 S.W.2d 626, 636-38 (Tenn. 1997).

After reviewing the record of the suppression hearing and the trial judge's findings of fact, we are unable to hold that the evidence preponderates against the trial judge's findings. Thus, we conclude that the duct tape evidence and the results of the gunshot residue test were properly admitted into evidence as obtained incident to an arrest upon probable cause. Accordingly, this evidence should not be suppressed on the first ground advanced by the defendant–arrest without probable cause.

### B. Exclusionary Rule

Next, we must determine whether the evidence which the defendant seeks to exclude was the product of an illegal detention. The defendant contends that his detention for a period exceeding forty-eight hours without a judicial determination of probable cause led to a constitutional violation. As a result, he contends that evidence obtained during his detention was "fruit of the poisonous tree" and should, therefore, be suppressed.

The Fourth Amendment to the United States Constitution grants the right to be secure from unreasonable searches and seizures and prohibits the issuance of warrants without probable cause. Article I, section 7 of the Tennessee Constitution is identical in purpose and intent with the Fourth Amendment. State v. Troxell, 78 S.W.3d 866, 870 (Tenn. 2002). The United States Supreme Court has held that although an officer may make a warrantless arrest based on probable cause, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." Gerstein v. Pugh, 420 U.S. 103, 114 (1975); see also State v. Davis, 141 S.W.3d 600, 626 (Tenn. 2004). In County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991), the United States Supreme Court further clarified that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." When a judicial determination of probable cause is not made within the first forty-eight hours of arrest, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." Id. at 57.

In this case, the defendant was held from December 28, 1998, until January 1, 1999, without a judicial determination of probable cause. Because this period exceeded forty-eight hours, the burden shifted to the State "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance" to justify the delay. The State failed to meet that burden, thus, the Fourth Amendment was violated.

The constitutional violation notwithstanding, we must determine whether the evidence

obtained during the first hours of the defendant's detention should be suppressed. In State v. Huddleston, 924 S.W.2d 666, 673 (Tenn. 1996), this Court held that the exclusionary rule applies in cases where a defendant is arrested and held for an excessive period of time before being taken before a magistrate for a judicial determination of probable cause. The Court then adopted the "fruit of the poisonous tree" analysis to determine whether a statement obtained during an illegal detention must be suppressed. Id. at 674. The Court held that "the focus is on whether the evidence was obtained by exploitation of the Fourth Amendment illegality." Id. (citing Wong Sun v. United States, 371 U.S. 471, 488 (1963)). Although Huddleston involved a statement by a defendant, the same "fruit of the poisonous tree" analysis applies to physical evidence obtained during an illegal detention. See Wong Sun, 371 U.S. at 486 (stating that the "policies underlying the exclusionary rule [do not] invite any logical distinction between physical and verbal evidence").

"In the typical 'fruit of the poisonous tree' case . . . the challenged evidence [is] acquired by police after some initial Fourth Amendment violation, and the question before the court is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." United States v. Crews, 445 U.S. 463, 471 (1980) (emphasis in original). Such is the case in State v. Dean, 76 S.W.3d 352, 359 (Tenn. Crim. App. 2001), in which a defendant was arrested and detained for a period of five days without a judicial determination of probable cause. On the fifth day, the lead investigator served a warrant on the defendant to take hair and blood samples. Id. The defendant then told the investigator he wanted to talk about the case, and he proceeded to make a confession. Id. Afterwards, hair and blood samples were taken pursuant to the warrant. Id. The Court of Criminal Appeals held that the statement should be suppressed as "fruit of the poisonous tree." Id. at 364. Regarding the tangible evidence, the intermediate court held that the issuance of a valid search warrant for the hair and blood samples was wholly unrelated to, and did not depend on, the unlawful detention. Id.

In the case under submission, however, the evidence was obtained during the first few hours of the defendant's detention and before he was jailed. The question, therefore, is whether the exclusionary rule applies to evidence obtained before the detention exceeded forty-eight hours in duration, thereby ripening into a presumptive constitutional violation. As this Court noted in Huddleston, the primary question is whether the evidence was obtained by exploitation of the constitutional violation. Huddleston, 924 S.W.2d at 674. In State v. Webster, 81 S.W.3d 244, 246-47 (Tenn. Crim. App. 2002), a defendant was arrested and detained for seventy-two hours before a probable cause determination was made by a magistrate. The defendant confessed eleven hours after his arrest. Id. at 251. The Court of Criminal Appeals held that because the statement was given before the detention ripened into a constitutional violation, the confession was not subject to suppression. Id. Although Webster involved a confession, the rationale is applicable to tangible evidence.

Other jurisdictions have directly addressed the admissibility of tangible evidence in cases of unlawful detentions in violation of the Fourth Amendment. In United States v. Fullerton, 187 F.3d 587, 591 (6th Cir. 1999), the Sixth Circuit Court of Appeals held that a four-day delay for a probable

cause determination by a magistrate does not require suppression of physical evidence seized at the time of the defendant's arrest. The Court reasoned that the evidence was "not obtained pursuant to the <u>McLaughlin</u> violation." <u>Id.</u> Similarly, in <u>Black v. State</u>, 871 P.2d 35, 39 (Okla. Crim. App. 1994), the Oklahoma Court of Criminal Appeals held the lack of a timely probable cause determination does not require suppression of evidence seized from the defendant immediately after his lawful arrest. Lastly, in <u>State v. Koch</u>, 499 N.W.2d 152, 160 (Wis. 1993), the Wisconsin Supreme Court held that although a judicial probable cause determination was not made within forty-eight hours after the defendant's warrantless arrest, the evidence obtained was not a consequence of the violation and need not be suppressed.

We conclude here that the evidence at issue was obtained neither by exploitation of nor as a consequence of the violation of the Fourth Amendment. Despite the defendant's incarceration for an excessive period of time without a judicial determination of probable cause, all of the evidence sought to be suppressed was obtained before the delay ripened into a constitutional violation. Clearly, the evidence was obtained following an arrest based on probable cause. Based on the foregoing, we conclude that the duct tape and gunshot residue test were not "fruits of the poisonous tree," were not subject to exclusion on the Fourth Amendment grounds, and were properly admitted as evidence at trial.

## IV. Conclusion

We conclude that the initial detention and subsequent arrest of the defendant were proper. Further, we conclude that following the arrest, the defendant was improperly detained for over forty-eight hours without a judicial determination of probable cause. The evidence sought to be suppressed, however, was obtained before the detention ripened into a constitutional violation. Thus, the evidence was properly admitted at trial. It appearing that the defendant, Kevin Lawrence, is indigent, costs of this review are taxed to the Appellee, State of Tennessee, for which execution may issue, if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE