IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2010

## STATE OF TENNESSEE v. JERMAINE MITCHELL GRAY

**Direct Appeal from the Circuit Court for Madison County**
**No. 08-622     Donald H. Allen, Judge**

_____

**No. W2009-01260-CCA-R3-CD  - Filed November 10, 2010**

_____

A Madison County jury convicted the defendant, Jermaine Mitchell Gray, of aggravated robbery, a Class B felony. The trial court sentenced the defendant as a Range I, standard offender to twelve years in the Tennessee Department of Correction. On appeal, the defendant contends that (1) the trial court erred by denying his motion to suppress his confession to police; (2) the evidence was insufficient to support his conviction; and (3) his sentence is excessive. Following our review, we conclude that there is no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Jermaine Mitchell Gray.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

This case concerns the June 3, 2008, robbery of the Waffle House restaurant on South Highland Avenue in Jackson, Tennessee. The Madison County Grand Jury indicted the defendant, Jermaine Mitchell Gray, and two co-defendants, Jessie Bernard Polk and Courtney Taylor, for aggravated robbery, a Class B felony.

*Suppression Hearing*

Prior to trial, the defendant moved the court to suppress a statement he gave to Sergeant Alberto Colon of the Jackson Police Department. The parties presented the following testimony at an evidentiary hearing held on February 2, 2009.

Sergeant Colon testified that on June 3, 2008, he separately interviewed three subjects in custody for the robbery of the Waffle House. He interviewed the defendant last. Sergeant Colon testified that he advised the defendant of his *Miranda* rights by reading an advice of rights form. The defendant indicated that he understood his rights, signed the advice of rights form, and waived his rights. Sergeant Colon also signed the form. He said that no other witnesses were present.

Sergeant Colon testified that, at first, the defendant denied any involvement in the robbery. After Sergeant Colon related to the defendant what Mr. Polk and Mr. Taylor had told him in their interviews, the defendant began telling him what happened. Sergeant Colon testified that the interview was in question-answer format, with the sergeant writing down the defendant's answers to his questions. The sergeant formulated the answers into a written formal statement that he read to the defendant. He gave the defendant an opportunity to make corrections, but the defendant did not change anything. The defendant initialed the statement at its beginning and end, and he signed it at the bottom of the page. Sergeant Colon identified a copy of the defendant's statement, which the court entered into evidence. Sergeant Colon denied coercing, forcing, pressuring, or threatening the defendant into making the statement and said that the defendant gave the statement voluntarily. He testified that he would have taken the defendant back to his cell if the defendant had indicated that he did not want to make a statement. After the defendant gave his statement, Sergeant Colon told him that he would tell the district attorney that the defendant had cooperated.

On cross-examination, Sergeant Colon testified that he did not write down when the interview with the defendant ended, but he estimated that the interview lasted thirty minutes. He said that the defendant never asked for an attorney. Sergeant Colon testified that he had never met the defendant before that day nor was he familiar with the defendant's family. According to Sergeant Colon, the defendant signed the rights waiver form before giving his statement. Sergeant Colon said that he was not armed when he interviewed the defendant, and the interview was not recorded.

The defendant testified that he told Sergeant Colon that he would not make a statement without a lawyer present. According to the defendant, Sergeant Colon did not present him with a rights waiver form until after he gave a statement. When the defendant refused to give a statement after the sergeant showed him his co-defendants' statements,

-2-

Sergeant Colon told him that he would put the defendant "upstairs in a pile full of murderers" and have those individuals hurt him. The defendant said that he felt threatened, so he gave a statement and signed the form. The defendant further testified that he had encountered the sergeant before. He said that his brother had been shot in the head "for a robbery[,] and [Sergeant Colon] also told [him] he was going to charge [him] with [his] brother's robbery."

The trial court accredited Sergeant Colon's testimony and denied the defendant's motion to suppress his statement. The matter proceeded to trial on February 26, 2009.

*Trial*

*State's Proof.* Marie Owen testified that she was a server at the Waffle House on South Highland Avenue in Jackson, Tennessee, on June 3, 2008. She was working the 10:00 p.m. to 6:00 a.m. shift that day along with her co-worker, Sam Doaks. At approximately 1:20 a.m., the restaurant door opened. Ms. Owen looked up when she heard someone say, "Drop it off." She saw two men wearing black hoodies and dark jeans. They both had ski masks with holes cut out covering their faces. One man was shorter than the other, and the taller man had darker skin. They both carried handguns. The shorter man held his gun on Ms. Owen while the taller man held his gun on Mr. Doaks. Ms. Owen testified that the shorter man carried a silver semi-automatic, and the other man had a black gun. The shorter man laid a white plastic bag on the counter and told Ms. Owen to give him the money from the cash register. She removed approximately $300 from the register and put it in the plastic bag. She testified that the money was mostly in $5 and $1 denominations, along with a couple of $20 and $10 bills and rolled quarters. The shorter man asked her if they had a safe. When she responded that they did but she could not open it, the shorter man came around the counter and unsuccessfully pulled on the safe door. The man told them to get down. Ms. Owen crouched down behind the counter, but she was able to see the men exit. She could not say what direction they went but assumed that they went behind the restaurant because they did not pass by the front windows. Ms. Owen testified that she was scared during the robbery, but neither she nor Mr. Doaks was injured. She further testified that the taller man did not say anything while inside the restaurant and that the shorter man appeared scared. She called the police from her cell phone after the men left, and the first officer responded within five to ten minutes of her call. Ms. Owen testified that she could not identify the men from photographs, but the defendant appeared to be the same height and have the same skin color as the man who spoke to her.

Sam H. Doaks testified that he was working at the Waffle House on South Highland Avenue on June 3, 2008, when two men robbed the restaurant at approximately 1:20 a.m. Mr. Doaks said that he did not see the men enter because he had his back to the door while he was cooking. He heard someone say, "Drop it off." Mr. Doaks turned around to see two individuals, both with black handguns. One of the men instructed them to take the cash out

of the register, which Ms. Owen did. She put the money in a plastic bag. One of the men asked about their safe, and Mr. Doaks told him the safe was bolted down. The man checked the safe but was unable to open it. The men told Ms. Owen and Mr. Doaks to get down, and they left the restaurant. Mr. Doaks said that the men went behind the restaurant when they left. He did not see a car. Mr. Doaks testified that the men did not take any personal property from him. He said that they did not point a gun at him, but they were waving their guns when they came in the restaurant. Mr. Doaks testified that the men wore all black and covered their faces. One man was shorter than the other. The shorter man was the only one who spoke. Mr. Doaks said that he was not afraid during the robbery because of "the way [he] grew up."

Officer Gary Longmire, a patrolman with the Jackson Police Department, testified that he received a call at 1:20 a.m. on June 3, 2008, that an armed robbery had just occurred at the Waffle House on South Highland. He was the first officer to respond and arrived within a minute of receiving the call. Officer Longmire received information from dispatch that two armed individuals ran from the restaurant on foot, so he began to search for the suspects. He went into the restaurant and took down Ms. Owen and Mr. Doaks' report. Officer Longmire broadcasted a "be on the lookout" for two black males. One male was eighteen to twenty-three years old, approximately five feet, six inches tall and 130 pounds, with a small mustache. The second male was in his late teens or early twenties, approximately five feet, nine inches tall and 130 pounds. Both men were wearing black pullover shirts, dark jeans, and black ski masks with the eyes and mouth cut out. He never came in contact with the two individuals.

Officer Eston Bernard Williams, a patrolman and K9 officer with the Jackson Police Department, testified that he received the call about the Waffle House robbery at approximately 1:20 a.m. on June 3, 2008. At the time, he was in his patrol car situated in the median between South Highland Avenue and South Royal Street. He began spotlighting cars coming from the direction of the Waffle House because he had a clothing description but not a car description. He spotlighted a Chevrolet Cavalier at 1:25 a.m., and a passenger matching the description of the suspects ducked down, which raised his suspicion. Officer Williams followed the vehicle and tried to initiate a stop. The vehicle continued traveling approximately a quarter of a mile before stopping. While following the vehicle, he observed three individuals inside. He did not observe anything unusual happening in the car. When the vehicle did stop, the two passengers exited the car. Officer Williams notified other officers over the radio that the passengers fled southbound on foot, and he made contact with the driver, Courtney Taylor. Officer Williams testified that both passengers wore all black.

On cross-examination, Officer Williams testified that the occupants of the vehicle did not throw anything out of the car while he was following them.

Officer Susan Cole, a patrol officer with the Jackson Police Department, testified that she assisted Officer Williams after he stopped the vehicle. She searched, on foot, for the two passengers and located them both hiding in bushes near a house on Daughtery Street. One of the individuals was the defendant, whom she identified in the courtroom. The other individual was Jessie Polk. She took the defendant into custody and detained Mr. Polk until Officer Cepparulo arrived to assist her. She patted the defendant down after arresting him, and he did not have a weapon.

Officer Stuart Cepparulo, a patrol officer with the Jackson Police Department, testified that he responded to the South Highland area after receiving the call about the Waffle House robbery. He was on foot near 217 Daughtery Street when Officer Cole advised that she had located two suspects. Officer Cepparulo went to her location and made contact with Jessie Polk. He testified that the defendant, Officer Cole, and three or four other officers were also present. Officer Cepparulo could not recall what the defendant was wearing, but he said that Mr. Polk wore a black hoodie. Officer Cepparulo took Mr. Polk into custody. When conducting a search of Mr. Polk incident to the arrest, Officer Cepparulo discovered a white plastic bag in the center pocket of Mr. Polk's hoodie containing approximately $290 in currency. Officer Cepparulo testified that he participated in the search of the Chevrolet Cavalier stopped by Officer Williams. Under the front passenger seat, he found a .380 caliber semi-automatic handgun wrapped in a blue and black bandana. The handgun had one round in the chamber and no magazine. Officer Cepparulo also found a black ski mask with the eyes and mouth cut out on the back passenger seat, as well as a black glove and a gray glove on the floorboard.

On cross-examination, Officer Cepparulo testified that the handgun found in the Cavalier was black.

Jessie Polk testified that he entered a guilty plea to the aggravated robbery of the Waffle House on June 3, 2008. Mr. Polk testified that he, Courtney Taylor, and the defendant had planned to rob someone because they needed money. He said that the robbery was everyone's idea. They drove around until they saw that the Waffle House was the only place open and that there were no customers inside. Mr. Taylor stopped the car in a neighborhood behind the restaurant. Mr. Polk and the defendant went inside while Mr. Taylor stayed with the car. Mr. Polk testified that he was wearing a blue pullover and khakis. He covered his face with a bandana. He said that the defendant covered his face with a black ski mask. Mr. Polk testified that both he and the defendant carried weapons. Mr. Polk got the handgun he carried from Mr. Taylor's car. He did not know where the defendant got his weapon. He had never seen the weapons before that night.

Once inside the restaurant, Mr. Polk testified that he was the one who demanded the money. He said that they both went behind the counter, but only the defendant checked the safe. Mr. Polk testified that he took the plastic bag filled with money, and he and the defendant ran back to Mr. Taylor's car. When they got back to Mr. Taylor's car, Mr. Polk removed the bandana, wrapped it around the gun, and placed the gun under the front passenger seat. He testified that after Mr. Taylor stopped for the police, he ran. He thought that the defendant also ran and Mr. Taylor stayed with the car.

On cross-examination, Mr. Polk testified that he was not sure whether the defendant actually had a handgun. On redirect examination, he said that the defendant carried the item he had as if it were a weapon and pointed it at the Waffle House employees. Mr. Polk further testified that they planned to split the money three ways.

Sergeant Alberto Colon, of the Jackson Police Department's Violent Crimes Unit, testified that he learned about the Waffle House robbery when he came to work the morning of June 3, 2008. He read the information that another investigator had gathered and then went to interview the suspects. He interviewed the three suspects separately and spoke to the defendant last. Sergeant Colon testified that before he interviewed the defendant, he read the defendant his rights, which the defendant subsequently waived by signing the rights waiver form. The defendant gave his statement to Sergeant Colon. Sergeant Colon read the defendant's statement into the record as follows:

> It was late. Courtney and Jessie showed up at the barber shop to pick me up. I did not know where we are [sic] going. I did not know we were going to rob nobody [sic]. We were driving around and Courtney brought up the idea about robbing something or person. None of us have a job. We rode out south and then went north. We came back out south and we did not see anyone at the Waffle House. Courtney was going to pick us up at the street behind the Waffle House. Me and Jessie got dressed out in the car. Jessie had the gun and I had a silver screwdriver. Jessie had the bag and told them to put the money in it. Then Jessie said something about the safe. They said they could not open it so I went around to check. It was locked. I couldn't open it. We left and met Courtney. We got stopped on Daughtery Street and me and Jessie took off running. I don't remember how long I ran, but the police caught me on Daughtery Street. I have known Courtney almost all of my life and did not start kicking it until about two months ago. I got rid of the screwdriver as soon as I got out of the Waffle House.

On cross-examination, Sergeant Colon testified that he had no contact with the defendant prior to June 3, 2008. He said that he did not use coercion or force to make the

defendant give his statement. Sergeant Colon recalled that the defendant denied involvement until the sergeant showed him his co-defendants' statements. He said that the defendant mentioned something about wearing red clothing.

*Defense Proof.* Lieutenant Harold Petty, of the Madison County Sheriff's Department, testified that he was the Assistant Jail Administrator at the Criminal Justice Complex, and he was responsible for maintaining custody and control of inmates' personal belongings after they are in custody. Lieutenant Petty identified the clothes that the defendant wore at the time of his booking: black and clear sneakers, a black t-shirt, and red shorts.

The defendant testified that he was not involved in the Waffle House robbery. He said that Sergeant Colon threatened him into making his statement by telling him that "he was going to charge [him] with an offense that happened to [his] brother." The defendant said that Mr. Taylor and Mr. Polk picked him up at a friend's house on Carol Street in Bemis between 1:20 a.m. and 1:25 a.m. on June 3, 2008. He did not know what they did before they picked him up. When they were stopped by the police, he got out of the car and ran because Mr. Taylor told him to run. The defendant claimed that Mr. Polk testified against him in order to receive the minimum sentence. He said that the only reason he knew about the robbery was because Sergeant Colon showed him his co-defendants' statements.

*State's Rebuttal Proof.* Sergeant Colon testified that the defendant gave his statement voluntarily. He did not verbally or physically abuse the defendant, nor did he make any promises or threats.

After closing arguments and deliberation, the jury returned a verdict of guilty as charged.

*Sentencing*

The trial court held a sentencing hearing on April 13, 2009. The court entered the defendant's presentence report into evidence and heard arguments by the state and defense. The trial court noted that the offense was non-probatable and found that the defendant was a Range I offender. The court further found that four enhancement factors applied: (1) the defendant had a history of criminal behavior based upon underage alcohol use and use of marijuana and cocaine; (2) the defendant was a leader in the commission of an offense involving two or more criminal actors based upon the victims' testimony as well as his co-defendant's testimony; (3) the offense involved more than one victim; and (4) the defendant had been adjudicated as a juvenile to have committed an offense that would constitute a felony if committed by an adult based upon the defendant's prior conviction for aggravated

burglary. The court considered the defendant's youth as a mitigation factor. The court sentenced the defendant to twelve years in the Tennessee Department of Correction.

**Analysis**

On appeal, the defendant challenges the trial court's denial of his motion to suppress his statement, the sufficiency of the evidence to support his conviction, and his sentence.

*Motion to Suppress*

The defendant contends that the trial court erred in denying his motion to suppress the statement given to Sergeant Colon because, in essence, the sergeant's testimony was uncorroborated. The state responds that the evidence does not preponderate against the trial court's accreditation of Sergeant Colon's testimony, which established that the defendant's statement was voluntary.

Both the United States and Tennessee Constitutions protect a defendant from compelled self-incrimination. *See* U.S. Const. amend. V; Tenn. Const. art. I, § 9. As a result, government authorities are prohibited from using statements made by the defendant during custodial interrogation unless the defendant has been previously advised of his constitutional right against compulsory self-incrimination and right to an attorney. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Whether waiver of a right is voluntarily and knowingly made is determined by the totality of the circumstances under which the right was waived. *See State v. Callahan*, 979 S.W.2d 577, 581 (Tenn. 1998). However, "[a] defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense. Rather, coercive police activity is a necessary predicate to finding that a confession is not voluntary." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996) (citations and internal quotations omitted). "The primary consideration in determining the admissibility of the evidence is whether the confession is an act of free will." *State v. Berry*, 141 S.W.3d 549, 577-78 (Tenn. 2004). A statement is involuntarily given when "the behavior of the state's law enforcement officials was such as to overbear" the will of the accused and "bring about confessions not freely self-determined." *Berry*, 141 S.W.3d at 578 (citing *State v. Kelly*, 603 S.W.2d 726, 728 (Tenn. 1980) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)).

When reviewing the trial court's decision on a motion to suppress, this court conducts a *de novo* review of the trial court's conclusions of law and application of law to facts. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). However, the trial court's findings of fact are presumed correct unless the evidence contained in the record preponderates against them. *See State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence

are matters entrusted to the trial judge as the trier of fact." *State v. Lawrence*, 154 S.W.3d 71, 75 (Tenn. 2005) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). Moreover, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001).

In this case, the defendant and Sergeant Colon testified at a pre-trial suppression hearing. Sergeant Colon testified that he advised the defendant of his rights and the defendant voluntarily waived those rights and gave a statement. The defendant testified that Sergeant Colon threatened him into giving a statement. The trial court specifically accredited Sergeant Colon's testimony when finding that the defendant voluntarily gave his statement. After reviewing the record, including the trial testimony, we conclude that the evidence does not preponderate against the trial court's finding that Sergeant Colon's testimony was credible. Based upon Sergeant Colon's testimony at the suppression hearing and at trial, we further conclude that the defendant voluntarily waived his constitutional right against compulsory self-incrimination and right to an attorney. Therefore, the defendant is without relief as to this issue.

*Sufficiency of the Evidence*

The defendant argues that the evidence was insufficient to support his aggravated robbery conviction because the state did not prove that he had a weapon. The state responds that the jury accredited the testimony of eyewitnesses who testified that both robbers had handguns.

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651,

659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

To sustain the defendant's conviction for aggravated robbery, the state was required to prove that the defendant committed an intentional or knowing theft of property from the person of another using violence or fear and that the theft was accomplished with a deadly weapon or an article used to lead a victim to reasonably believe it to be a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-401(a), -402(a).

Viewed in the light most favorable to the state, the evidence at trial showed that the defendant and Mr. Polk entered the Waffle House on South Highland Avenue in Jackson, Tennessee, with the intent to take the restaurant's money and that Ms. Owen took approximately $290 from the register at gunpoint and gave it to the men. Ms. Owen and Mr. Doaks testified that both robbers had handguns. Mr. Polk testified that the defendant had an item that appeared to be a gun and that the defendant carried it as if it were a weapon. Ms. Owen testified that she was afraid during the robbery. Based on this testimony, we conclude that any rational trier of fact could have found beyond a reasonable doubt that the defendant committed aggravated robbery. Therefore, the defendant is without relief as to this issue.

## *Sentencing*

Finally, the defendant contends that his sentence was excessive because the trial court improperly applied enhancement factors. The state concedes that the evidence does not support the trial court's finding that Mr. Doaks was a second victim; however, the state argues that this court should affirm the defendant's sentence because the trial court followed the sentencing procedure and imposed a sentence within the applicable range.

When an accused challenges the length and manner of service of a sentence, this court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401. This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with our sentencing statutes, and (2) the trial court's findings are adequately supported by the record. *See State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001); *see also* Tenn. Code Ann. § 40-35-210(f).

Prior to the 2005 amendments to the 1989 Sentencing Act, in sentencing a defendant, a court was to begin at the mid-point of the statutory range and then apply the appropriate enhancement and mitigating factors. Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, -35-210(c). The trial court is free to select any sentence within the applicable range if the length of the sentence complies with the purposes and principles of the Sentencing Act. Tenn. Code Ann. § 40-35-210; *see also State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (noting that such principles encompass themes of punishment fitting the crime, deterrence, and rehabilitation). The 2005 amendments set forth certain advisory sentencing guidelines which the trial court is required to consider but is not bound by. *See* Tenn. Code Ann. § 40-35-210(c). Although the application of factors is advisory, a court shall consider evidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114. *Id.* § 40-35-210(b)(5). The trial court is also required to place on the record what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing. *Id.* § 40-35-210(d). Once applied, the chosen enhancement factor becomes a sentencing consideration subject to review under Tennessee Code Annotated section 40-35-401(c)(2). Thus, while the court can weigh enhancement factors as it chooses, the court may only apply the factors if they are "appropriate for the offense" and "not already an essential element of the offense." *Id.* § 40-35-114. The trial court must find facts related to sentencing by a preponderance of the evidence rather than beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

Aggravated robbery is a Class B felony. Tenn. Code Ann. § 39-43-402(b). As a Range I standard offender, the defendant was eligible for a sentence of eight to twelve years for each count. *Id.* § 40-35-112(a)(2).

The defendant first challenges the trial court's application of the enhancement factor that he was a leader in a criminal offense involving two or more criminal actors. The proof at trial indicated that the three co-defendants decided together to rob the Waffle House. The witnesses agreed that the defendant was the person who checked the safe. Ms. Owen testified that the shorter robber was the person who talked to her, and she indicated that the defendant's height matched that of the shorter robber. Mr. Polk, however, testified that he was the one who spoke to Ms. Owen. Regardless of whether the defendant was the speaker, our case law has established that there can be more than one leader in a criminal offense because the statute reads "a" leader rather than "the" leader. *See State v. Freeman*, 943 S.W.2d 25, 30 (Tenn. Crim. App. 1996). We conclude that the record does not preponderate against the trial court's application of this enhancement factor.

The defendant further challenges the application of the enhancement factor that the offense involved more than one victim. The indictment in this case lists Marie Owen as a victim but not Sam Doaks. When the indictment charges that the offense was committed against a specific, named victim, as it does in this case, the Tennessee Supreme Court has held that it is inappropriate to apply the multiple victims enhancement factor. *See State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002). Therefore, we agree with the defendant that the trial court misapplied this enhancement factor.

However, the trial court appropriately found that three other enhancement factors applied. Additionally, the record shows that the trial court considered all relevant facts and circumstances and followed the sentencing procedure and guidelines. The court imposed a sentence within the appropriate range. When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence. *See Carter*, 254 S.W.3d at 344-45. Therefore, we affirm the defendant's sentence as imposed by the trial court.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE