IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 21, 2013

**STATE OF TENNESSEE v. BILLY TATE**

**Appeal from the Criminal Court for Hamilton County**
**No. 272364      Don W. Poole, Judge**

**No. E2012-02576-CCA-R3-CD - Filed September 27, 2013**

Appellant, Billy Tate, was convicted of burglary of a business and theft over $1,000, and the trial court sentenced him to twelve years in the Tennessee Department of Correction. After filing a petition for post-conviction relief, he was granted a delayed appeal of his convictions. On appeal, he argues that the trial court erred by: (1) denying his motion to suppress a show-up identification and the subsequent in-court identification by the same witness; (2) not declaring a mistrial when a witness testified that appellant had refused to give a statement; (3) allowing the State to introduce lay testimony regarding scientific evidence; and (4) denying his motion to suppress based on an illegal seizure. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Stephen M. Goldstein, Chattanooga, Tennessee, for the appellant, Billy Tate.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William H. Cox, III, District Attorney General; and Lance Pope, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Facts

This case stems from the burglary of Vaughn Equipment Repair in Chattanooga, Tennessee, and the theft of $3,350 worth of goods. Appellant was indicted for burglary of a business and theft of property over $1,000, and he was convicted as charged. On his first

direct appeal, this court affirmed his convictions and sentences, concluding that he had waived the issues presented by failing to provide an adequate record for review. *See State v. Billy Tate*, No. E2010-01336-CCA-R3-CD, 2011 WL 3841962, at *1 (Tenn. Crim. App. Aug. 30, 2011), *perm. app. denied* (Tenn. Nov. 15, 2011). Appellant petitioned for post-conviction relief, and the trial court granted a delayed appeal while staying the post-conviction proceedings. This appeal is now properly before this court.

A. Motion to Suppress Hearing

Prior to trial, appellant filed two motions to suppress. The first was to suppress the show-up identification[1] that occurred at the crime scene, and the second was to suppress any and all evidence obtained as a result of the allegedly illegal seizure of appellant. The trial court held a hearing on the motions, at which Chattanooga Police Detective Michael Early and Napolean Dunson testified.

Detective Early testified that he was dispatched to Vaughn Equipment Repair on Monday, March 30, 2009,[2] to investigate a break-in that had occurred over the weekend. When he arrived, Mr. Vaughn, the business owner, advised him that the thief had entered the building by prying away siding and had taken "tools, Cokes, [and] miscellaneous other stuff." Mr. Vaughn had also observed footprints in and around the building that were not his and had not been there when he last left the building. Detective Early testified that he saw the footprints and had Investigator Brian Russell from the crime scene unit come to the site to photograph the prints. Detective Early said that he went to a "crack house" located near the business because "most of the neighborhood thieves hang out" there. He explained that he had been to the crack house on several occasions and had previously found "neighborhood thieves" there. Detective Early went inside and found appellant sitting in the front room. He asked appellant whether he could see his shoes. When appellant showed him his shoes, Detective Early determined that they were "a positive match to the shoe prints that [were] left at the scene."

Detective Early detained appellant to take him to the police station for questioning. En route, he stopped at Vaughn Equipment Repair so that Investigator Russell could photograph appellant's shoes. While at the scene, Napoleon Dunson approached the

---

[1] A show-up occurs when a witness is confronted with the suspect or a single photograph. *See State v. Thomas*, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989).

[2] There was a discrepancy between the dates mentioned at the suppression hearing and at the trial. However, the record is clear that Detective Early responded on March 30, 2009; therefore, that is the date we will use throughout this opinion.

detective and "asked [him] what was going on." Detective Early told him that there had been a burglary, and Mr. Dunson asked whether a chainsaw had been taken. Detective Early consulted with Mr. Vaughn, who confirmed that a chainsaw was missing. Mr. Dunson then told Detective Early that over the weekend, "he had [seen] an individual carrying a chainsaw right in front of the business[,] and he had previously seen him inside the fence of the business there." Detective Early asked Mr. Dunson whether he would recognize the person with the chainsaw, and Mr. Dunson said he would be able to because the person was "very distinctive." Detective Early testified that at the time, appellant was sitting in the front seat of Detective Early's Ford Taurus, which was not a marked police vehicle. Detective Early asked Mr. Dunson whether the person with the chainsaw was the person sitting in the front seat of the car, and Mr. Dunson "looked and . . . positively identified him." Detective Early testified that he did not do anything to influence Mr. Dunson's identification.

On cross-examination, Detective Early testified that he had permission to enter the "crack house." When he initially saw appellant, Detective Early said that he might have asked him when he got out of jail. Detective Early said that he knew appellant from arresting him in 2005 for burglary and for another arrest prior to 2005. Detective Early testified that he had no formal training in identifying shoe prints but had "made several cases on the shoe prints." Detective Early further testified that Mr. Dunson described the person with the chainsaw as a tall, light-complected black male, with "craters on his face." When asked whether he "could have put together a lineup" to show Mr. Dunson, Detective Early responded that he did not "know if that would have worked" because Mr. Dunson had already seen appellant in the car, but he agreed that he could have prepared a lineup.

Napoleon Dunson testified that he owned a business near Vaughn Equipment Repair and explained that his "back gate [was] facing [Vaughn's] front gate." He said that he went to his business on the weekend prior to March 30, 2009. While he was in the area, he saw someone inside Vaughn Equipment Repair's fence. He later saw a person exiting the fence carrying a chainsaw. Mr. Dunson said that he looked the person "dead in the face" but did not talk to him. He testified that there was nothing "divert[ing] [his] attention from looking at [the] person." On Monday, March 30, he noticed Mr. Vaughn talking to Detective Early, so he approached them to ask Mr. Vaughn if he was having a problem. They explained about the break-in, and Mr. Dunson asked whether a chainsaw had been taken. When they confirmed that one had been stolen, Mr. Dunson told them about seeing the person carrying a chainsaw over the weekend. Detective Early asked him whether he could identify the person if he saw him again, and Mr. Dunson answered affirmatively. Mr. Dunson said that Detective Early walked over to his car and opened the front door. Mr. Dunson saw appellant and said, "[T]hat's the mother-f***** right there."

On cross-examination, Mr. Dunson testified that he did not see anyone sitting in Detective Early's vehicle until Detective Early pointed out appellant sitting in the front seat. On re-direct examination, Mr. Dunson identified appellant in the courtroom as the person who had the chainsaw.

## B. Trial Testimony

At trial, Barbara Sue Vaughn testified that she and her husband, Kenny Vaughn, owned Vaughn Equipment Repair in Chattanooga, Tennessee. On March 30, 2009, she arrived at the business at approximately 10:00 a.m. and noticed that someone had been inside the business. Items that she had left "sitting just inside the door" the previous Friday were missing, and in the office, "[her] desk drawers were pulled out, some stuff was just turned upside down, [and] some was in the floor . . . ." Mrs. Vaughn testified that the thief had entered by pulling away the siding from the back of the building. She and her husband made a list of all of the items taken, some of which were new and others used, and they estimated that the total value of the items taken was $3,350.

On cross-examination, Mrs. Vaughn testified that she was the last person to leave the business on Friday, and she locked the doors. The business was closed over the weekend, and no one should have been inside. She said that the property is surrounded by a seven to eight-foot tall chain-link fence. Mrs. Vaughn further said that a person could get in through a place where "the fence doesn't go all the way together."

Detective Early testified that he was assigned to the property crimes division. On March 30, 2009, he responded to a burglary at Vaughn Equipment Repair. He noticed several footprints inside and outside of the building, so he requested that a crime scene investigator photograph the prints. Detective Early went to a residence in the same neighborhood of Vaughn Equipment Repair. Appellant was at the residence, and Detective Early had the opportunity to see the bottom of appellant's shoes. Detective Early testified that based on his observations, appellant's shoes matched the shoe prints at the scene. Detective Early said that he transported appellant to the scene so that the crime scene investigator could photograph his shoes. While there, Napoleon Dunson approached him and Mr. Vaughn to ask whether Mr. Vaughn was missing a chainsaw. Mr. Vaughn confirmed that his chainsaw was missing, and Mr. Dunson advised Detective Early that he had seen a person walking away from the business with a chainsaw during the weekend. Mr. Dunson told Detective Early that he would be able to identify the person, so Detective Early asked him if the person with the chainsaw was the person (appellant) sitting in the front seat of Detective Early's vehicle. Mr. Dunson said that he was "absolutely positive" that he was the same person.

At this point in the trial, the State asked Detective Early what happened next, and Detective Early testified that appellant refused to make a statement. Appellant's counsel moved for a mistrial, but the trial court issued a curative instruction instead, ruling that there was not a manifest necessity to declare a mistrial. The trial court instructed the jury that Detective Early's statement was nonresponsive and inappropriate and should not be considered during deliberations.

On cross-examination, Detective Early testified that he had no specialized training in "footprint analysis," and he did not send the shoe print photographs or appellant's shoes to the Tennessee Bureau of Investigation for analysis. He said, "[It was] clear [that] it was the same print." Detective Early testified that he did not do any research about how common appellant's shoes were or what stores in the area sold them.

Chattanooga Police Investigator Brian Russell testified that he photographed the crime scene, including the various shoe prints, and appellant's shoes. He also collected appellant's shoes as evidence. Investigator Russell processed the scene for fingerprints but was unable to lift any prints.

Napoleon Dunson testified that he saw a person inside the fence of Vaughn Equipment Repair during the weekend prior to March 30, 2009. On the same day, he saw a person walking down the street carrying a chainsaw. He did not know if it was the same person. He said that he came very close to the person carrying the chainsaw and got a "real good" look at him. Mr. Dunson identified appellant in the courtroom as the person with the chainsaw. He testified that he also identified appellant at the crime scene while appellant was sitting in the police detective's vehicle.

Following the close of proof and deliberations, appellant was convicted by the jury of burglary of a business and theft of property over $1,000. The trial court sentenced him as a career offender to serve concurrent sentences of twelve years for each conviction.

## II. Analysis

### A. Motion to Suppress

Appellant presents two suppression issues for our review. First, he contends that the trial court erred by denying his motion to suppress the show-up identification and subsequent courtroom identification of appellant by Mr. Dunson. Second, he submits that the trial court should have granted his motion to suppress any and all evidence obtained in the case because, he argues, Detective Early did not have probable cause to arrest him.

## 1. Standard of Review

In reviewing the trial court's decision on a motion to suppress, we review the trial court's legal conclusions de novo. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). In doing so, we give deference to the trial judge's findings of fact unless the evidence preponderates otherwise. *Id.*; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). In reviewing the findings of fact, evidence presented at trial may "'be considered by an appellate court in deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

## 2. Identification

"To be admissible as evidence, an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." *State v. Cribbs*, 967 S.W.2d 773, 794 (Tenn. 1998). Show-up identification procedures, where a witness is confronted with the suspect or a single photograph, have long been considered "inherently suggestive and unfair to the accused." *State v. Thomas*, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989). Courts have condemned show-up identification procedures except when "(a) there are imperative circumstances which necessitate a show[-]up, or (b) the show[-]up occurs as an on-the-scene investigatory procedure shortly after the commission of the crime." *Id.* (footnote call number omitted). Nonetheless, a finding that identification procedures are suggestive does not necessitate exclusion of out-of-court or in-court identifications if the identification was reliable. *State v. Philpott*, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). The following factors should be considered when analyzing the reliability of an identification:

1. the opportunity of the witness to view the criminal at the time of the crime;

2. the witness's degree of attention at the time of the crime;

3. the accuracy of the witness's prior description;

-6-

4. the level of certainty demonstrated at the confrontation;

5. the time elapsed between the crime and the confrontation.

*Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972)).

In this case, the show-up identification occurred at the crime scene but at least one day, possibly two days, after the crime took place. Thus, the inherently suggestive nature of the show-up was not overcome because it did not occur "shortly after the crime" and there were no "imperative circumstances" necessitating the show-up. *Thomas*, 780 S.W.2d at 381. Nonetheless, the *Biggers* factors lead to the conclusion that the show-up identification was reliable. Mr. Dunson testified that he had a clear look at the suspect's face from a close distance and was not distracted in any fashion. Mr. Dunson described the suspect to Detective Early prior to seeing appellant in the vehicle, noting the distinctiveness of the suspect's appearance. Furthermore, he was very certain during the show-up that appellant was the same person he had seen with the chainsaw. Finally, only one to two days had passed since he had seen the suspect. Therefore, the show-up identification was reliable, and the trial court did not err by denying appellant's motion to suppress it or the subsequent in-court identification. Appellant is not entitled to relief on this issue.

### 3. Illegal Seizure (Appellant's Issue IV)

As set forth above, appellant contends that Detective Early lacked probable cause to arrest him. Thus, he contends that the evidence seized as a result of his arrest should have been suppressed. We begin with the proposition that "[b]oth the state and federal constitutions protect against unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression." *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). Our supreme court has recognized three categories of police interactions with private citizens: "(1) a full-scale arrest, which requires probable cause; (2) a brief investigatory detention, requiring reasonable suspicion of wrongdoing; and (3) a brief police-citizen encounter, requiring no objective justification." *Id.* (citing *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000)). "'While arrests and investigatory stops are seizures implicating constitutional protections, consensual encounters are not.'" *Id.* (quoting *State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006)).

An arrest supported by probable cause is an exception to the warrant requirement. *Id.* (citing *State v. Hanning*, 296 S.W.3d 44, 48 (Tenn. 2009)); *see Brown v. Illinois*, 422 U.S. 590, 598 (1975). "Probable cause . . . exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably

trustworthy information, are 'sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" *Echols*, 382 SW.3d at 277-78 (quoting *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997)); *see Beck v. Ohio*, 379 U.S. 89, 91(1964). "'Probable cause must be more than a mere suspicion.'" *Echols*, 382 S.W.3d at 278 (quoting *State v. Lawrence*, 154 S.W.3d 71, 76 (Tenn. 2005). However, probable cause "'deal[s] with probabilities[,] . . . not technical[ities,] . . . the factual and practical considerations of everyday life on which reasonable and prudent [persons] . . . act.'" *Id.* (quoting *State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008)); *see Brinegar v. United States*, 338 U.S. 160, 175 (1949).

In this case, Detective Early testified that he observed several shoe prints in and around the burglarized business. After observing the crime scene and gathering information from the victim, Detective Early went to a nearby house, which he described as a known gathering place for local thieves. A resident of the house allowed him entry, and he saw appellant sitting in the front room. He knew appellant from arresting him in the past for burglary. Detective Early asked to see appellant's shoes, and appellant complied. Detective Early testified that appellant's shoes matched the prints found at the crime scene. From this testimony, the trial court concluded that Detective Early had probable cause that appellant committed the burglary and theft. We agree with the trial court because appellant had previously been arrested for burglary, he was found near the location of the burglary, and his shoe prints placed him at the business in question when it had been closed and locked up. This issue has no merit.

### B. Failure to Grant Mistrial

Appellant argues that the trial court should have granted a mistrial after Detective Early testified that appellant had refused to give a statement. Declaring a mistrial serves to repair the damage done to the judicial process when an occurrence at trial renders an impartial verdict impossible. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). A trial court may declare a mistrial if it appears that some matter has occurred that would prevent the jury from reaching an impartial verdict. *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). A trial court should only declare a mistrial in criminal cases in which a manifest necessity requires such action. *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). A mistrial is appropriate "when a trial cannot continue or a miscarriage of justice would result if it did." *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994).

This court will review the trial court's decision to grant or deny a mistrial for abuse of discretion. *See State v. Hall*, 976 S.W.2d 121, 147 (Tenn. 1998) (citing *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990)). In reviewing the trial court's decision granting or

denying a mistrial for abuse of discretion, this court considers three factors: (1) whether the State elicited the testimony; (2) whether the trial court gave the jury a curative instruction; and (3) the relative strength or weakness of the State's proof. *State v. Welcome*, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007) (citing *State v. Lawrence Taylor*, No. W2002-00183-CCA-R3-CD, 2003 WL 402276, at *10 (Tenn. Crim. App. Feb. 14, 2003)). The party requesting the mistrial bears the burden of establishing the necessity for it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

The transcript of the trial reveals that the State asked Detective Early, "What did you all do next[?] [W]here did you go next?" Detective Early responded, "I asked Mr. Tate if he wanted to talk to me, give me a statement[.] [H]e refused." Appellant objected to the testimony, stating that a curative instruction would not be sufficient. The trial court stated that it would issue a curative instruction because there was no "manifest necessity that [the jury could not] render a fair and impartial verdict." The court instructed the jury that it was not to consider Detective Early's statement in deliberations because it was nonresponsive and inappropriate. We conclude that the trial court did not abuse its discretion because the State did not elicit the testimony; the trial court issued a curative instruction; and the State's case was relatively strong, given Mr. Dunson's testimony. While an experienced detective should have known not to comment on appellant's failure to give a statement, the record does not support a conclusion that the detective made the statement with any malicious intent. Therefore, appellant is without relief as to this issue.

### C. Lay Opinion Testimony

Appellant contends that the trial court improperly allowed Detective Early to testify regarding the matching of appellant's shoes with the shoe prints found at the scene because, he argues, such testimony was "scientific opinion" and Detective Early had not been qualified as an expert. "It is well-settled that the propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to appellate review for abuse of discretion." *State v. Caughron*, 855 S.W.2d 526, 540 (Tenn. 1993). Lay witnesses may testify to opinions or inferences when "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701(a).

In a prior opinion, this court reviewed the issue of whether an expert was required to testify about shoe print analysis and concluded that "[i]t is not necessary that the witness be an expert to testify as to shoe or footprint identification" because the testimony was within common knowledge and based on observations made at the crime scene. *State v. Anthony Duran Hines*, No. M2007-00493-CCA-R3-CD, 2008 WL 2026113, at *2 (Tenn. Crim. App. May 12, 2008). In *Hines*, the police officer testified that he saw shoe prints at the crime

scene that were similar to the tread on the suspect's shoes. *Id.* In this case, Detective Early testified conclusively that the shoe print and appellant's shoes were a match, which is slightly different than the testimony in *Hines*. However, we are persuaded by the reasoning of the *Hines* opinion and conclude that his testimony was within the common knowledge of the jury and was based on the witness's observations. Furthermore, appellant has presented no precedential authority stating that shoe print analysis is scientific evidence that requires expert testimony.

If the testimony was improper, it was harmless error under Tennessee Rule of Appellate Procedure 36(b) in light of the record as a whole. The jury was able to draw its own conclusions based on the photographs of the shoe prints and appellant's shoes. In addition, the State presented an eyewitness who saw appellant leaving the closed business with a chainsaw during the weekend that the burglary occurred. Therefore, we cannot say that any error in admitting shoe print analysis testimony "more probably than not affected the judgment." Tenn. R. App. P. 36(b).

## CONCLUSION

Based on the record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE