IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2020

**STATE OF TENNESSEE v. HUNTER ALLEN HELMICK**

**Appeal from the Circuit Court for Montgomery County
No. CC18-CR-1147 William R. Goodman, III, Judge**

_____

**No. M2019-00941-CCA-R3-CD**

_____

The Appellee, Hunter Allen Helmick, was charged with possession of LSD with intent to manufacture, sell, or deliver, a Class B felony. He filed a motion to suppress statements he made to police officers about LSD being in his car, arguing that the statements were the result of custodial questioning without his receiving Miranda warnings. He also argued that the trial court should suppress the LSD found during a search of his car because the police found the LSD as a result of his statements. The trial court granted the motion, suppressing both the Appellee's statements and the drug evidence, and the State appeals the trial court's ruling. Based upon our review of the record and the parties' briefs, we agree with the State that the trial court erred by suppressing the drug evidence. Therefore, the portion of the trial court's order suppressing the drug evidence is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. The portion of the trial court's order suppressing the Appellee's statements is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Case Remanded**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and C. Dan Brollier, Assistant District Attorney General, for the appellant, State of Tennessee.

Chase T. Smith (on appeal and at hearing), Clarksville, Tennessee, for the appellee, Hunter Allen Helmick.

**OPINION**

**I. Factual Background**

This case relates to a search of the Appellee's car by the Clarksville Police Department (CPD) and the discovery of LSD in the center console on April 6, 2018. In October 2018, the Montgomery County Grand Jury indicted the Appellee for possession of LSD with intent to manufacture, sell, or deliver, a Class B felony. On December 28, 2018, he filed a motion to suppress statements he made to the officers about LSD being in the center console, claiming that he made the statements while under arrest and in response to questioning by the officers without his receiving <u>Miranda</u> warnings. He also requested that the trial court suppress the LSD the officers found in the center console because they found the drug evidence as a result of his statements. In the alternative, the Appellee claimed that he was under the influence of LSD when he made the statements and that he could not knowingly consent to a search of his car.

On March 1, 2019, the trial court held a hearing on the motion. During the hearing, the State requested a continuance because "my officer is still not here." The State also requested that the trial court view the officer's "in-car recording" prior to the next hearing. The trial court advised the parties that it would watch the video and rescheduled the suppression hearing for May 15.

Despite rescheduling the suppression hearing for May 15, the trial court filed an order on March 15, 2019, granting the Appellee's motion to suppress his statements and the LSD found in the car. In the order, the trial court summarized the evidence, which was based entirely on the video, as follows:

> The video shows the [Appellee] outside the vehicle, unsteady on his feet and somewhat slurred in speech. The [Appellee] is placed in handcuffs and put into the back seat of the patrol officer's patrol car. Almost immediately after placing the [Appellee] in the patrol car the officer asks the [Appellee], "What happened, sir." The [Appellee] responds, "I would like to know what is going on."

> At this point the officer advised the [Appellee] that he was . . . laying on the ground and again asks what is going on. The [Appellee] replies "I have some acid on me." The officer responds, "You still got acid, right?" [Appellee] responds, "Yes sir, in my body."

> The officer then asks the [Appellee] if he has any more acid in the car, to which the [Appellee] responds, "No sir." The officer follows up with the question "Is there any possibility that there is acid in the car" after which the [Appellee] states, "Yes." This exchange continues with the [Appellee] in the rear seat of the patrol car. A few minutes later, what sounds like another

officer goes to the window of the patrol car and asks . . . the [Appellee], "Where is the acid in the car, do you want to show us?" The [Appellee] replies, "No." Again the [Appellee] is asked, "Where is the acid" after which the [Appellee] says in the console.

At no time during the exchange between [Appellee] and the officers is the [Appellee] advised of his Miranda warnings.

The trial court found that the Appellee was "in custody" for Miranda purposes when the officers questioned him and that he made incriminating statements about LSD being in the center console without his receiving Miranda warnings. The trial court also found that the officers found the LSD as "fruit of the poisonous tree." Therefore, the trial court granted the Appellee's motion to suppress his statements and the drug evidence.

On May 15, 2019, the trial court held the rescheduled suppression hearing. At the outset of the hearing, the trial court advised the parties that "I misunderstood what the agreement was" and that "I thought that we were proceeding just with the video." The trial court agreed to hear the State's proof, and the State called Officer Ronald Brown, Jr., of the CPD to the stand.

Officer Brown testified that about 11:40 p.m. on April 6, 2018, he was on patrol and turned onto Holiday Drive from Rudolph Boulevard. As he passed by a chiropractor's office, which was closed for the day, he noticed a car in the parking lot. The car's taillights were on, the driver's door was open, and the Appellee was lying on the ground next to the open door. Officer Brown said that he pulled into the parking lot to "conduct a welfare check" and that the Appellee "rose to his feet."

Officer Brown testified that the car was "directly in the middle of the parking lot," not in a parking space, and that the engine was on. He asked if the Appellee was okay, and the Appellee answered, "'Yes, I'm fine. I'm trying to get home.'" Officer Brown noticed that the Appellee "wasn't acting normal" in that he was "real fidgety, real herky-jerky type movements." Officer Brown decided to frisk the Appellee for officer safety and instructed him to turn around. As Officer Brown was "patting him down," the Appellee turned around and faced Officer Brown. Officer Brown said that "at that point, I placed him in handcuffs to detain him." Officer Brown acknowledged that he detained the Appellee because the Appellee had turned around and faced him.

Officer Brown testified that based on the Appellee's movements, he "definitely had a suspicion" that the Appellee was "under the influence of something." Officer Brown explained, "[A]s he turned around, . . . he looked towards traffic and he reached for the door of the vehicle. Just based off my knowledge, training, and experience, yes, I can tell

when somebody's levelheaded and when somebody's basically not in the right frame of mind." The State asked Officer Brown why he placed the Appellee in handcuffs, and Officer Brown answered, "For officer safety reasons."

Officer Brown testified that he asked the Appellee if anything was inside the car and that the Appellee said no. Officer Brown stated, "And before I could ask him anything else, he said -- he stated, 'There's acid inside the vehicle.'" Officer Brown asked the Appellee for consent to search the car, and the Appellee gave consent. During the search, Officer Brown found "tinfoil" in the center console. He said the tinfoil "wasn't so much hidden, just sitting inside the center console." Officer Brown unwrapped the tinfoil and saw that it contained LSD. He stated that when he arrested a person for driving under the influence (DUI), his normal practice was to search the person's car, including the center console and glove box, incident to the arrest.

Officer Brown testified that he did not advise the Appellee of the Appellee's Miranda rights and that he assumed a drug agent, who was called to the scene, "would have done that." While the Appellee was in the back of Officer Brown's patrol car, Officer Brown advised him that he was under arrest. Officer Brown moved the Appellee's car into a parking space and transported the Appellee to the hospital for "medical clearance" so that he could take the Appellee to jail.

On cross-examination, Officer Brown acknowledged that when he placed the Appellee in handcuffs for officer safety, the Appellee was not free to leave. Officer Brown never saw the Appellee inside the car, never saw the Appellee driving the car, and never saw the Appellee in physical control of the car. He said he did not arrest the Appellee for DUI. On redirect examination, Officer Brown testified that it "never crossed [his] mind" to arrest the Appellee for DUI and that he arrested the Appellee because he found LSD in the Appellee's car.

Officer Christian Canales of the CPD testified that on April 16, 2018, he was "still in training" and riding with Officer Brown. As Officer Brown turned onto Holiday Drive, they saw the Appellee lying on the ground. Officer Canales said that the Appellee was lying "flat on his back, next to his car with the door open" and that the Appellee's toes were "pointed up toward the sky."

Officer Canales testified that Officer Brown turned the patrol car around to initiate contact with the Appellee and that the Appellee "immediately stood up." The officers got out of the patrol car and talked to the Appellee, and the Appellee made "jerking motions" and had a difficult time complying with the officers' instructions. Officer Canales acknowledged that the Appellee allowed the officers to conduct a "pat down" and said that the pat down was "to make sure he didn't have any weapons on him or anything like [that],

- 4 -

especially with his erratic behavior." Officer Canales explained that the Appellee was "coherent in the way he spoke, but what he was saying didn't exactly corroborate with what was going on in the situation."

Officer Canales testified that the key was in the car's ignition, that the engine was "running," and that the Appellee was within three feet of the car. Officer Canales said that he and Officer Brown handcuffed the Appellee "because at that point in time, we were going to have an arrest, at that point in time, because we knew he was under the influence of something." After they handcuffed the Appellee, they put him into the back of the patrol car.

Officer Canales testified that while the Appellee was in the back of the patrol car, he asked the Appellee, "'What's going on, sir?'" The Appellee answered, "'I have acid in the car.'" Officer Canales said that neither he nor Officer Brown read Miranda warnings to the Appellee but that they searched the car incident to the Appellee's arrest. The Appellee was given Miranda warnings "later on."

At the conclusion of Officer Canales's direct testimony, the trial court questioned him as follows:

> THE COURT: On the video it sounds like there's two different individuals that talk with [the Appellee]. Were you the last officer that spoke with [the Appellee], when they came back and asked where the acid was?
>
> THE WITNESS: Am I the last officer?
>
> THE COURT: Or did you ask [the Appellee] where the acid was?
>
> THE WITNESS: Yes, after he told me he had acid in the car, I asked him, "Well, where do you have acid, sir?"
>
> And then I think he told us that it was the center console, Your Honor.
>
> THE COURT: And at that point, had you already commenced your search of the vehicle?
>
> THE WITNESS: Yes, we had already commenced the search. Yes, because Officer Brown was doing a search incident to arrest on the vehicle, Your Honor.

THE COURT:  . . . . [W]hen was it that you located the acid; was it before or after you -- [the Appellee] told you that it was in the console?

THE WITNESS:  It -- I believe it was after.  I believe it was after, Your Honor.

At the conclusion of the hearing, the State acknowledged that the officers did not give the Appellee <u>Miranda</u> warnings "in a timely fashion" and that his statements should be suppressed "as the Court has already ruled."  However, the State argued that the officers had probable cause to arrest the Appellee for DUI, even if they did not charge him with that offense; therefore, they could search the car incident to the arrest.  The State asserted that the officers inevitably would have found the LSD in the center console without the Appellee's statements and argued that the trial court should not suppress the drug evidence.  The trial court disagreed with the State and concluded that the officers found the LSD as a result of the Appellee's statements, noting that "a fairly significant" amount of time passed between the Appellee's telling the officers that acid was in the car and his telling them that the acid was in the center console.  Thus, the trial court granted the Appellee's motion to suppress his statements and the drug evidence and entered a judgment dismissing the charge.

## II.  Analysis

On appeal, the State contends that (1) the officers had probable cause to arrest the Appellee for DUI even if they did not charge him with that offense; (2) the officers "effectuat[ed]" an arrest for DUI by handcuffing the Appellee and putting him into the back of the patrol car; and (3) the trial court erred by suppressing the drug evidence because the officers found the LSD in the center console during a search incident to a lawful arrest.  The State acknowledges that the officers failed to read <u>Miranda</u> warnings to the Appellee prior to questioning him and, therefore, that the trial court properly suppressed his statements.  However, the State argues that the trial court erred by suppressing the drug evidence as "fruit of the poisonous tree" because the fruit of the poisonous tree doctrine is not a remedy for <u>Miranda</u> violations.  The Appellee claims that the trial court properly suppressed the drug evidence because the officers found the LSD as a result of his improper custodial interrogation.  We conclude that the trial court erred by suppressing the drug evidence.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996).  Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise."

Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the prevailing party is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

## A. Probable Cause for Arrest

First, the State claims that the officers had probable cause to arrest the Appellee for DUI. The Appellee contends that the officers did not have probable cause because "[w]hile it is true that the [Appellee] himself could have driven the vehicle, parked it in the middle of the parking, got out, left the car running, [and] passed [out] on the pavement it could also be true that the defendant was left there by another party." We agree with the State that the officers had probable cause for an arrest.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against "unreasonable searches and seizures." In general, warrantless searches and seizures are presumptively unreasonable and any evidence obtained as a result of the warrantless action is subject to suppression. State v. Richards, 286 S.W.3d 873, 878 (Tenn. 2009). However, if the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement," the evidence will not be suppressed. State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998).

One exception to the warrant requirement is an arrest based upon probable cause to believe that a crime has been or is being committed. Beck v. Ohio, 379 U.S. 89, 91 (1964); State v. Henning, 975 S.W.2d 290, 300 (Tenn. 1998). Our supreme court has stated that "[p]robable cause must be more than a mere suspicion." State v. Lawrence, 154 S.W.3d 71, 76 (Tenn. 2005) (citing State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982)). Moreover, "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act," constitutes probable cause. Henning, 975 S.W.2d at 294. Courts should determine the existence of probable cause after assessing all of the information available to the officer at the time of arrest. See Lawrence, 154 S.W.3d at 75-76; State v. Bridges, 963 S.W.2d 487, 491 (Tenn. Crim. App. 1997).

Tennessee Code Annotated section 55-10-401(a)(1) provides that it is unlawful for a person to drive or be in physical control of an automobile on any public roads or highways of this state "or any other premises that is generally frequented by the public at large" while under the influence of a controlled substance. In State v. Lawrence, 849 S.W.3d 761, 765 (Tenn. 2003), our supreme court adopted a totality-of-the-circumstances test for determining whether a defendant was driving or was in physical control of a vehicle. The

court noted that the determination "is highly factual and that all circumstances should be taken into consideration by the trier of fact." Lawrence, 849 S.W.3d at 765. The court went on to state that the following specific factors also can be considered:

> the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

Id. The factors "can be used as circumstantial evidence that the defendant had been driving the vehicle." Id.

Although Lawrence was a sufficiency-of-the-evidence case, we think the Lawrence factors are helpful in assessing whether the officers had probable cause to arrest the Appellee for DUI. The officers found the car near midnight in the middle of a parking lot of a closed business. The driver's door was open, and the Appellee was lying on his back next to the open door. The key was in the car's ignition, the engine was running, and no one but the Appellee was present. The car was capable of being moved as evidenced by Officer Brown's moving the car into a parking space before he transported the Appellee to the hospital. When the officers asked the Appellee if he was okay, the Appellee told them that he was trying to get home. Therefore, we have no hesitation in concluding that the officers had probable cause to believe the Appellee was driving or was in physical control of the car.

Moreover, the officers described the Appellee's movements as "jerky" and "fidgety" and described his behavior as "erratic." They said that he had difficulty following their commands and that he did not seem to be in his "right frame of mind." We have reviewed the video, and it supports the officers' testimony. The officers' conversation with the Appellee in the parking lot was not audible. However, after the officers put the Appellee into the back of the patrol car, the Appellee asked Officer Canales several times what was going on despite Officer Canales telling him each time that the officers found him lying next to his car. Therefore, based on the totality of the circumstances, the officers also had probable to believe that the Appellee was under the influence of a controlled substance. Accordingly, we conclude that the officers had probable cause to arrest the Appellee for DUI.

## B. Investigatory Detention vs. Full-Scale Arrest

Having determined that the officers had probable cause to arrest the Appellee, we turn to the State's claim that the officers effectuated an arrest before they questioned him

and searched his car. The Appellee asserts that the officers only detained him for officer safety prior to the search; therefore, they did not search the car incident to an arrest, and their warrantless search was unlawful. In support of his argument, the Appellee notes Officer Brown's testimony that the thought of arresting the Appellee for DUI never crossed Officer Brown's mind. We agree with the State that the officers effectuated an arrest.

Our courts have articulated three categories of police-citizen interaction and their corresponding evidentiary requirements: "(1) full-scale arrest, which must be supported by probable cause; (2) brief investigatory detention, which must be supported by reasonable suspicion of criminal activity; and (3) brief police-citizen encounter that requires no objective justification." State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009) (citations omitted). "[T]he first two [categories] rise to the level of a 'seizure' for constitutional analysis purposes." State v. Day, 263 S.W.3d 891, 901 (Tenn. 2008). "'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.'" State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). In other words, "a 'seizure' implicating constitutional concerns occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave." Id. at 425. An arrest, though,

> is more specifically defined as the "taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest." An arrest may be affected without formal words or a station house booking. However, there must be actual restraint on the arrestee's freedom of movement under legal authority of the arresting officer.

State v. Crutcher, 989 S.W.2d 295, 301-02 (Tenn. 1999) (citations omitted). Handcuffing and placing a person in the back of a patrol car does not automatically transform a brief detention for investigative purposes into an arrest. See State v. Marvin Roscoe, No. W2013-01714-CCA-R9-CD, 2014 WL 3511041, at *4 (Tenn. Crim. App. at Jackson, July 11, 2014).

The officers testified that upon approaching the Appellee, they noticed that his behavior was abnormal. Officer Canales testified that he and Officer Brown handcuffed the Appellee and put him into the back of the patrol car "because at that point in time, we were going to have an arrest, at that point in time, because we knew he was under the influence of something." Although Officer Brown testified that he never considered arresting the Appellee for DUI and that he detained the Appellee for officer safety, Officer

Brown also testified that the Appellee was not in his "right frame of mind" and that Officer Brown "definitely" suspected the Appellee was under the influence.

The trial court found that the Appellee was "in custody" for Miranda purposes when the officers put him into the patrol car and questioned him. The video shows that after the officers approached the Appellee in the parking lot, Officer Brown had the Appellee turn around with his back to Officer Brown so that Officer Brown could conduct a pat down. Within seconds of starting the pat down, the Appellee turned around and faced Officer Brown. Officer Brown made the Appellee turn around again and made the Appellee put his hands behind his back. Officer Brown resumed the pat down, handcuffed the Appellee, and directed him to the front of the patrol car. The Appellee leaned forward over the hood of the patrol car, and Officer Brown had the Appellee stand up. Officer Canales put the Appellee into the back of the patrol car and got into the patrol car with him while Officer Brown donned gloves and began searching the inside of the Appellee's car with a flashlight. While Officer Brown was searching, the Appellee asked Officer Canales to allow him to call his mother or get out of the patrol car, but Officer Canales refused. Therefore, we agree with the trial court that the Appellee was in custody for Miranda purposes. We also agree with the State that the officers effectuated an arrest of the Appellee.

## C. Search Incident to Arrest

Finally, the State claims that the trial court erred by suppressing the drug evidence because the officers found the LSD pursuant to a search incident to a lawful arrest. The State does not dispute that the officers failed to read Miranda warnings to the Appellee prior to questioning him in the patrol car, and, therefore, that the trial court properly suppressed his statements. See Miranda v. Arizona, 384 U.S. 436, 479 (1964) (providing that a suspect must receive Miranda warnings prior to custodial interrogation). The State argues, though, that the trial court improperly suppressed the drug evidence because the fruit of the poisonous tree doctrine is not a remedy for Miranda violations. The Appellee asserts that even if he were under arrest, the search of his car violated Arizona v. Gant, 556 U.S. 332 (2009). We conclude that the trial court erred by suppressing the drug evidence.

A warrantless search of a vehicle is presumed unreasonable unless the State demonstrates that the search was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). One of those exceptions is a search incident to an arrest. Police officers, incident to a lawful arrest, may execute a warrantless search of the person arrested and the area within the person's immediate control. Chimel v. California, 395 U.S. 752, 762-63 (1969). That area includes "the passenger area of any vehicle in which the arrestee was riding." Crutcher, 989 S.W.2d at 300-01. In Arizona v. Gant, 556 U.S. at 351, the United States

Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe that the vehicle contains evidence of the offense of arrest." Given the circumstances of this case, we think it was reasonable to believe that the car contained evidence related to the Appellee's arrest for DUI. Therefore, the officers could search the car incident to that arrest.

Nevertheless, the trial court suppressed the drug evidence as "fruit of the poisonous tree," concluding that the officers used the Appellee's statements to find the LSD in the center console. The video shows that while Officer Brown was searching the Appellee's car, Officer Canales was questioning the Appellee in the patrol car. The Appellee told Officer Canales that he had ingested acid and that acid was in the car. Meanwhile, Officer Brown continued to search the Appellee's car but did not find any drugs. A third officer arrived on the scene, walked to the patrol car, and asked the Appellee, "You got acid in your car? Where's it at in there?" The Appellee told him, "It's in the console, center console." The third officer called out to Officer Brown, "Center console." Officer Brown looked in the center console and found the LSD. Therefore, the video supports the trial court's conclusion that the officers found the LSD as a result of the Appellee's statements.

"Under the 'fruit of the poisonous tree' doctrine, evidence that is obtained through exploitation of an unlawful search or seizure must be suppressed." State v. Jenkins, 81 S.W.3d 252, 261 (Tenn. Crim. App. 2002) (citing Wong Sun v. United States, 371 U.S. 471, 488 (1963)). In this instant case, though, the evidence was obtained as a search incident to a lawful arrest. Moreover, as noted by the State,

> The "fruit of the poisonous tree" doctrine has not been applied as a remedy for Miranda violations. United States v. Patane, 452 U.S. 630, 642-43 (2004) (plurality opinion); id. at 644-45 (Kennedy, J., concurring). . . . The Fifth Amendment's privilege against self-incrimination is not implicated by the introduction at trial of physical evidence resulting from voluntary statements. Id., at 643 (plurality opinion). Rather, exclusion of the statements elicited during custodial interrogation "is a complete and sufficient remedy for any perceived Miranda violation." Id. at 641-42 (internal quotation marks omitted).

State v. Climer, 400 S.W.3d 537, 567 (Tenn. 2013) (footnote omitted). A defendant may file a motion to suppress nontestimonial evidence found as a result of the defendant's "unwarned statements only when the statements are the product of an actual violation of the privilege against self-incrimination, i.e., such as when actual coercion in obtaining the statement is involved or when the invocation of the right to remain silent or to have counsel present is not 'scrupulously honored.'" Walton, 41 S.W.3d at 92. The trial court did not

make any finding of coercion by the police in this case. Therefore, we conclude that the trial court erred by suppressing the drug evidence as fruit of the poisonous tree.

### III. Conclusion

Based upon the record and the parties' briefs, we conclude that the trial court erred by suppressing the LSD evidence but that the trial court properly suppressed the Appellee's statements. Accordingly, the trial court's suppression of the drug evidence is reversed, the trial court's suppression of the Appellee's statements is affirmed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
NORMA MCGEE OGLE, JUDGE